IN THE COURT OF APPEALS OF TENNESSEE
AT NASHVILLE
August 21, 2018 Session

## MARCELLA ANN BRECKER v. STEVEN CHARLES BRECKER

**Appeal from the Chancery Court for Williamson County**
**No. 45490    Walter C. Kurtz, Special Judge**

_____

### No. M2018-00120-COA-R3-CV

_____

Husband appeals the trial court's award of alimony to Wife, as well as the trial court's division of the parties' 2017 tax refund. The trial court determined that Wife's need was in the range of $17,500.00 per month and awarded Wife $15,000.00 per month in alimony in futuro, as well as $3,500.00 per month in rehabilitative alimony. We affirm the trial court's finding that Wife's need is in the range of $17,500.00 per month. We also affirm the trial court's award of $15,000.00 per month in alimony in futuro. We vacate, however, the award of rehabilitative alimony and the division of the parties' 2017 tax refund and remand for reconsideration in accordance with this opinion.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Chancery Court Affirmed**
**in Part, Vacated in Part, and Remanded**

J. STEVEN STAFFORD, P.J., W.S., delivered the opinion of the court, in which BRANDON O. GIBSON and KENNY ARMSTRONG, JJ., joined.

Donald Capparella, Nashville; and Virginia Story, Franklin, Tennessee, for the appellant, Steven Charles Brecker.

Larry Hayes, Jr., and Rachel M. Thomas, Nashville, Tennessee, for the appellee, Marcella Ann Brecker.

### OPINION

The parties, Marcella Ann Brecker ("Wife") and Steven Charles Brecker ("Husband") were married in 1990.[1] The parties had three daughters, all of whom had reached the age of majority at the time of the trial in this cause. On August 19, 2016, Wife filed a complaint for divorce on the ground of irreconcilable differences. Therein, Wife requested an award of alimony both pendente lite and permanent. Wife later filed an

_____
[1] At the time of trial, Wife was 51 and Husband was 52.

amended complaint alleging additional grounds of inappropriate marital conduct and adultery.[2] Prior to trial the parties had various disputes concerning payment of expenses for the parties' adult children, return of separate personal property, and the true nature of Husband's income. Throughout the pendency of this case, Husband was employed as Executive Vice President of Layton Construction, where he manages the company's healthcare construction unit. Prior to trial, Husband filed several income and expense statements indicating that he earned approximately $17,000.00 per month. By the time of trial, however, evidence showed that Husband's income was more in the realm of $90,000.00 per month.

Both parties hired vocational and financial experts to opine as to the parties' historical expenses, Husband's income, Wife's future employability, and her need for alimony. On November 27, 2017, Wife filed a motion in limine to exclude certain matters from Husband's financial expert's testimony. Specifically, Wife alleged that while Husband's expert, Vic Alexander, was timely disclosed, Husband later filed an untimely third report from Mr. Alexander concerning matters outside the scope of the previous disclosures, including Wife's anticipated post-divorce income and expenses. As such, Wife asked that Mr. Alexander's testimony based upon the third report be excluded or that a continuance be granted.

A trial was eventually held on December 4 and 5, 2017. At the start of trial, the trial court ruled on Wife's pending motion in limine. Although the motion sought to exclude testimony or proof concerning Mr. Alexander's third report based on its untimely disclosure, the trial court determined that no expert was necessary to determine Wife's anticipated expenses. As such, the trial court excluded Mr. Alexander's testimony on that issue. Importantly, Husband lodged no motion in limine to similarly exclude testimony from Wife's expert regarding the parties' historical expenses.

At trial, Wife testified to the parties' extravagant lifestyle. According to Wife, the parties owned one California vacation home and had looked at buying a second vacation home in another state. Wife testified that the parties often purchased extravagant gifts of jewelry or other items for each other or their daughters. According to Wife, the parties had taken vacations snowmobiling, as well as to Charleston, New York City, Las Vegas, Hawaii, Jamaica, Saint Kitts, Puerto Rico, London, and Paris.[3] In addition, the parties often visited their daughters at college; these visits included expenses for hotels, meals, and rental cars. Wife detailed a birthday for one of the parties' daughters in which the parties rented John Wayne's private yacht. There was no dispute that the parties drove luxury vehicles and that the parties lived in large homes over the years, some of which totaled over 5,000 square feet.

---

[2] Husband filed an answer admitting the additional grounds, but asserting that his ill conduct was the result of ill conduct by Wife.
[3] Wife further testified that the parties had most likely been to every state, although she admitted that a trip to Alaska involved only Husband and two of the parties' daughters.

At trial, Wife claimed $33,201.00 in monthly expenses.[4] These expenses included a $7,000.00 mortgage on a new condo in downtown Nashville, $2,772.00 for home repairs, $674.00 in home maintenance, over $500.00 in homeowners association fees, $638.00 in property taxes, $350.00 in housecleaning, nearly $800.00 for a car payment,[5] $1,300.00 for the expenses associated with a vacation home,[6] $833.00 for jewelry, $750.00 in groceries, $750.00 in eating out,[7] $300.00 in clothing, $108.00 in dry cleaning, $396.00 in pet expenses, $388.00 for beauty expenses, $433.00 for recreation, $764.00 for vacations, $855.00 for short trips, [8] as well as some expenses for the parties' youngest daughter. Wife testified that all of the expenses were based on the parties' historical spending but were limited to only her expenses.

Wife's financial expert, Kurt Myers, testified that the parties' joint average monthly spending was approximately $30,000.00 in 2014, 2015, and 2016, after large one-time "anomalies" were removed from the calculations, including a time when Husband purchased a considerable amount of stock from his company, as well as all cash withdrawals and income taxes. Mr. Myers admitted, however, that other large expenses were included in his calculations, including college tuition and car purchases.

Husband sharply contested Wife's claims of an extravagant lifestyle. He testified that the family of five spent between $12,000.00-$15,000.00 per month, with some larger one-time expenditures, such as vehicles and college tuition. Husband admitted that the parties owned a vacation home in Corona Del Mar, California, but contended that it was modest. Husband also admitted that the parties had taken trips overseas and snowmobiling but testified that the trips were not extravagant and were often related to work and therefore expensed to his employer.

The parties also disputed the extent to which Wife could earn income following the divorce. Although Wife had held some bookkeeping type jobs during the marriage following obtaining an accounting degree, she testified that she had generally not been very successful in those endeavors. Largely, Wife worked as a homemaker during the marriage. Later, however, Wife obtained both a Tennessee and a California real estate license, as the parties sold several homes during the marriage. The real estate licenses allowed the parties to save on commissions. Wife also used her license once for a family

---

[4] Approximately $2,200.00 of these expenses were attributable to the parties' youngest child, who was eighteen at the time of trial.

[5] Wife's two-year old car had no indebtedness at the time of trial. Wife testified, however, that she could not keep the car forever and that the parties typically exchanged cars "every couple of years."

[6] The expenses did not include a mortgage but included utilities, property taxes, pest control, and insurance. Although Wife testified that she currently did not own a vacation home, she testified that she intended to buy one in accordance with the parties' previous lifestyle as well as their plans prior to the initiation of divorce proceedings.

[7] Wife's statement included an additional $600.00 per month for groceries and eating out for the parties' youngest child.

[8] Wife testified that the short trips consisted of trips to visit her daughters at college, for which a hotel and rental car were required.

friend. In addition, both Husband and Wife worked to "flip" some of their houses during the marriage, sometimes resulting in significant profit. Both parties claimed that the other party was the person most involved with the remodeling and construction that led to these profits.

Vocational experts testified on behalf of each party. Wife's expert testified that she could earn no more than $35,000.00 per year in secretarial work. Husband's vocational expert opined that Wife could earn up to $51,000.00 per year. Both experts indicated that Wife would benefit from a period of retraining to improve her marketability in the workforce.

The trial court entered a detailed order on December 21, 2018, declaring the parties divorced. The trial court determined that the parties' marital property totaled $5,526,811.00. The trial court divided the property $2,698,091.00 to Wife (approximately 49%) and $2,828,720.00 to Husband (approximately 51%).[9] Among the property awarded to Wife was the marital home and an undeveloped lot in Franklin. The trial court noted that the parties' 2017 tax refund was unknown but awarded each party one-half of the refund.

The trial court also awarded Wife alimony in futuro of $15,000.00 per month, as well as rehabilitative alimony of $3,500.00 per month for eighteen months.[10] In reaching this decision, the trial court found that based on the testimony of both parties' vocational experts, Wife could expect to earn no more than $35,000.00 per year, following some training. In contrast, the trial court determined that Husband's income was approximately $90,000.00 per month. The trial court further determined that Wife's expectation regarding her future expenses was unreasonable, particularly the expenses for a vacation home and travel. The court found that while Wife was entitled to maintain a reasonably comfortable standard of living, any alimony award would be considered in conjunction with the assets she was awarded and her work income. The trial court removed expenses related to the adult children and other extravagances in determining that Wife's expenses are "more in the range of $17,500.00." Finally, the court noted that "even with investment income from the marital assets awarded," Wife would be unable to achieve the standard of living enjoyed by the parties during the marriage absent an alimony award. Finally, the trial court denied an award of attorney's fees to Wife. Husband thereafter timely appealed.

## Issues Presented

Husband raises two issues in this appeal, which are taken from his brief:

---

[9] Husband was also required to pay $4,202.00 in outstanding credit card debt, while Wife was ordered to pay only $127.00.

[10] Additionally, Husband was ordered to pay up to $650.00 of Wife's medical premium for a period of eighteen months.

1. Whether the trial court abused its discretion in its award of $15,000.00 in alimony in futuro and $3,500.00 in rehabilitative alimony for eighteen months, where the trial court's assessment of Wife's need was clearly erroneous, because the proof showed that (1) the entire family of five only spent $12,000.00 to $15,000.00 per month in expenses prior to the divorce; (2) Wife's reasonable expenses for herself now that their children were grown were far less than the expenses she claimed; and (3) Wife received a significant award of $2,698,091.00 in marital property, including $1,423,466.00 in bank accounts, which the trial court abused its discretion in not considering on the question of Wife's need.
2. Whether the trial court made a clerical error in requiring the parties to share the refund for tax year 2017, when the trial court record shows that the trial court really meant to refer to the 2016 tax year.

**Discussion**

**Alimony**

We begin with Husband's argument that the trial court erred in its calculation of alimony. The standard of review applicable in alimony cases was thoroughly considered in the Tennessee Supreme Court's Opinion in *Gonsewski v. Gonsewski*, 350 S.W.3d 99 (Tenn. 2011):

> [T]his Court [has] repeatedly and recently observ[ed] that trial courts have broad discretion to determine whether spousal support is needed and, if so, the nature, amount, and duration of the award. *See, e.g., Bratton v. Bratton*, 136 S.W.3d 595, 605 (Tenn. 2004); *Burlew v. Burlew*, 40 S.W.3d 465, 470 (Tenn. 2001); *Crabtree v. Crabtree*, 16 S.W.3d 356, 360 (Tenn.2000).

> Equally well-established is the proposition that a trial court's decision regarding spousal support is factually driven and involves the careful balancing of many factors. *Kinard v. Kinard*, 986 S.W.2d 220, 235 (Tenn. Ct. App. 1998); *see also Burlew*, 40 S.W.3d at 470; *Robertson v. Robertson*, 76 S.W.3d 337, 340–41 (Tenn. 2002). As a result, "[a]ppellate courts are generally disinclined to second-guess a trial judge's spousal support decision." *Kinard*, 986 S.W.2d at 234. Rather, "[t]he role of an appellate court in reviewing an award of spousal support is to determine whether the trial court applied the correct legal standard and reached a decision that is not clearly unreasonable." *Broadbent v. Broadbent*, 211 S.W.3d 216, 220 (Tenn. 2006). Appellate courts decline to second-guess a trial court's decision absent an abuse of discretion. *Robertson*, 76 S.W.3d at 343. An abuse of discretion occurs when the trial court causes an

injustice by applying an incorrect legal standard, reaches an illogical result, resolves the case on a clearly erroneous assessment of the evidence, or relies on reasoning that causes an injustice. ***Wright ex rel. Wright v. Wright***, 337 S.W.3d 166, 176 (Tenn. 2011); ***Henderson v. SAIA, Inc.***, 318 S.W.3d 328, 335 (Tenn. 2010). This standard does not permit an appellate court to substitute its judgment for that of the trial court, but "'reflects an awareness that the decision being reviewed involved a choice among several acceptable alternatives,' and thus 'envisions a less rigorous review of the lower court's decision and a decreased likelihood that the decision will be reversed on appeal.'" ***Henderson***, 318 S.W.3d at 335 (quoting ***Lee Medical, Inc. v. Beecher***, 312 S.W.3d 515, 524 (Tenn. 2010)). Consequently, when reviewing a discretionary decision by the trial court, such as an alimony determination, the appellate court should presume that the decision is correct and should review the evidence in the light most favorable to the decision. ***Wright***, 337 S.W.3d at 176; ***Henderson***, 318 S.W.3d at 335.

***Gonsewski***, 350 S.W.3d at 105–06 (footnote omitted).

Currently, Tennessee law recognizes four types of spousal support: "(1) alimony in futuro, (2) alimony in solido, (3) rehabilitative alimony, and (4) transitional alimony." ***Gonsewski***, 350 S.W.3d at 107 (citing Tenn. Code Ann. § 36-5-121(d)(1)). In this case, the trial court awarded Wife alimony in futuro, which is a type of alimony "intended to provide support on a long-term basis until the death or remarriage of the recipient." ***Gonsewski***, 350 S.W.3d at 107 (citing Tenn. Code Ann. § 36-5-121(f)(1)). Alimony in futuro may be awarded where "the court finds that there is relative economic disadvantage and that rehabilitation is not feasible." ***Gonsewski***, 350 S.W.3d at 107 (citing Tenn. Code Ann. § 36-5-121(f)(1)); *see also* ***Riggs v. Riggs***, 250 S.W.3d 453, 456 n.2 (Tenn. Ct. App. 2007). This type of alimony is appropriate when

> the disadvantaged spouse is unable to achieve, with reasonable effort, an earning capacity that will permit the spouse's standard of living after the divorce to be reasonably comparable to the standard of living enjoyed during the marriage, or to the post-divorce standard of living expected to be available to the other spouse.

***Gonsewski***, 350 S.W.3d at 107–08 (citing Tenn. Code Ann. § 36-5-121(f)(1)). According to the Tennessee Supreme Court:

> Alimony in futuro "is not, however, a guarantee that the recipient spouse will forever be able to enjoy a lifestyle equal to that of the obligor spouse." ***Riggs***, 250 S.W.3d at 456 n. 2. In many instances, the parties' assets and incomes simply will not permit them to achieve the same standard of living after the divorce as they enjoyed during the marriage. ***Robertson***, 76

S.W.3d at 340. While enabling the spouse with less income "to maintain the pre-divorce lifestyle is a laudable goal," the reality is that "[t]wo persons living separately incur more expenses than two persons living together." **Kinard**, 986 S.W.2d at 234. "Thus, in most divorce cases it is unlikely that both parties will be able to maintain their pre-divorce lifestyle . . . ." **Id.** It is not surprising, therefore, that "[t]he prior concept of alimony as lifelong support enabling the disadvantaged spouse to maintain the standard of living established during the marriage has been superseded by the legislature's establishment of a preference for rehabilitative alimony." **Robertson**, 76 S.W.3d at 340.

**Gonsewski**, 350 S.W.3d at 108. The other type of alimony awarded in this case, rehabilitative alimony, is "intended to assist an economically disadvantaged spouse in acquiring additional education or training which will enable the spouse to achieve a standard of living comparable to the standard of living that existed during the marriage or the post-divorce standard of living expected to be available to the other spouse." **Id.** (citing Tenn. Code Ann. § 36-5-121(e)(1)).

In order to determine whether to award alimony and, if so, the amount and duration of the award, the court is directed to consider several factors, including the age, mental condition, and physical health of the parties, the length of the marriage, the parties' relative earning capacities, the separate assets of the parties, the provisions made with regard to marital property, and the standard of living the parties enjoyed during the marriage. *See* Tenn. Code Ann. § 36-5-121(i). Although the trial court should consider all relevant factors, "the two that are considered the most important are the disadvantaged spouse's need and the obligor spouse's ability to pay." **Gonsewski**, 350 S.W.3d at 110 (quoting **Riggs**, 250 S.W.3d at 457); *see also* **Bratton**, 136 S.W.3d at 605; **Robertson**, 76 S.W.3d at 342; **Burlew**, 40 S.W.3d at 470.

Here, Husband does not take issue with the trial court's decision to award either rehabilitative alimony or alimony in futuro to Wife based on her relative economic need and her need for retraining prior to entering the workforce.[11] Nor does Husband raise any argument that he is unable to pay the alimony awarded. Rather, the only dispute regarding the alimony at issue is whether the trial court awarded Wife more alimony than she needs. We therefore confine our review of the alimony award at issue solely to that question. As evidenced by the issue designated by Husband above, he argues that the trial court's error results from three factors: (1) proof that the parties spent only between $12,000.00 and $15,000.00 per month; (2) Wife's over inflated expenses; and (3) the trial court's failure to consider Wife's investment income.

---

[11] At oral argument, counsel for Husband did raise some argument regarding the award of rehabilitative alimony. When questioned by a member of this panel, however, counsel for Husband conceded that no issue had been raised regarding the types of alimony awarded in this case.

We begin with Husband's argument that the proof showed that the parties spent no more than $15,000.00 per month for a family of five. We agree that Husband testified that the parties' expenses were generally between $12,000.00 and $15,000.00 per month after excluding one-time car purchases and college tuition. We cannot agree, however, that this testimony was undisputed or that the trial court was required to accept Husband's testimony on this issue. When questioned regarding Wife's income and expense statement, she indicated that many of the expenses were based upon what the parties have historically spent. In addition, Wife's expert testified that the parties generally spent approximately $30,000.00 per month, after subtracting withdrawals, cash, and other anomalous spending.[12] While we concede that Mr. Myers's report did include payments for some one-time payments, the record shows that the purchase of cars was not anomalous to the parties' lifestyle. Indeed, Wife testified that the parties often purchased new cars every few years and that she anticipated purchasing a new car in the coming years. Given the conflicting testimony on this issue, we will not overturn the trial court's decision to reject Husband's testimony regarding the parties' spending in favor of the other evidence presented on this issue.[13]

Husband argues, however, that the trial court erroneously excluded expert proof that would have supported his testimony concerning the parties' expenses.[14] Specifically, Husband contends that the trial court abused its discretion in admitting an expert analysis of the parties' spending by Wife's expert while excluding a similar expert report by Husband.[15] Wife filed a motion to exclude testimony from Mr. Alexander's third report on the basis that the disclosure of the report was untimely.[16] Ultimately, the trial court

---

[12] In his brief, Husband asserts that Mr. Myers failed to subtract certain one-time expenses such as "a $100,000.00 cash withdrawal for Husband to purchase an interest in his employer" in reaching the $30,000.00 monthly expense figure. Husband mischaracterizes Mr. Myers's testimony. In fact, Mr. Myers testified that he reached the $30,000.00 figure after taking out the unusual or large expenses. Mr. Myers later clarified that to reach the $30,000.00 figure he "backed out . . . the amounts where it says withdrawals, cash, and income taxes." The cash withdrawal for the purchase of stock was therefore excluded from Mr. Myers's calculation of monthly expenses.

[13] The trial court did not make express credibility findings. The trial court's decision, however, shows that Husband was less than candid throughout the proceedings, as he claimed prior to trial income of only $17,000.00 per month, while the trial court found that his income actually totaled approximately $90,000.00 per month, a difference of over $850,000.00 per year.

[14] Husband's brief erroneously refers to Mr. Myers as Husband's expert and Mr. Alexander as Wife's expert at times.

[15] It is unclear whether the two experts intended to opine as to identical subject matters. Wife's expert, Mr. Myers, confined his testimony on this issue to the parties' historical spending. In contrast, the expert disclosure for Mr. Alexander indicated that he was to opine as to Wife's need for alimony including her anticipated post-divorce income and expenses. On appeal, Husband asserts that Mr. Alexander was improperly prevented from testifying as to historical spending, rather than anticipated expenses, during re-cross-examination. Counsel for Wife objected on the basis that the information was beyond the scope of cross-examination. The trial court ultimately ruled that it stood by its prior ruling regarding the need for expert proof. At no point did counsel for Husband explain that the testimony would concern only historical spending in the same manner as Mr. Myers's testimony.

[16] Mr. Alexander was allowed to testify without objection as to other matters concerning

- 8 -

excluded this proof on a different basis, that an expert was not needed to determine Wife's anticipated expenses. The trial court only reached this decision after counsel for Husband agreed that the trial court did not need an expert to "tell me about somebody's needs."[17] Following the exclusion of this proof from Mr. Alexander, Husband's counsel lodged no oral motion to likewise exclude the testimony of Mr. Myers regarding historical expenses. Likewise, no objection was raised to Mr. Myers's opinions regarding the historical spending of the parties during Mr. Myers's testimony.

Here, the basis of Husband's appellate argument rests on his assertion that it was unfair to exclude Mr. Alexander's testimony where Mr. Myers's testimony was not also excluded. Respectfully, we conclude that any such argument is waived on appeal. As an initial matter, we note that Husband has not cited in his appellate brief nor has our review revealed where this particular argument was raised in the trial court. Generally, arguments may not be raised for the first time on appeal. *See **State Dept. of Human Servs. v. Defriece***, 937 S.W.2d 954, 960 (Tenn. Ct. App. 1996) (citing S*impson v. Frontier Cmty. Credit Union*, 810 S.W.2d 147, 153 (Tenn. 1991)).

Moreover, the Tennessee Rules of Appellate Procedure make clear that relief is generally not available "to a party responsible for an error or who failed to take whatever action was reasonably available to prevent or nullify the harmful effect of an error." Tenn. R. App. P. 36(a); *see also **State v. Banks***, 271 S.W.3d 90, 170 (Tenn. 2008) ("Tennessee law is well-established that a party who invites or waives error, or who fails to take reasonable steps to cure an error, is not entitled to relief on appeal."). Here, following the exclusion of his expert on the issue of spending, Husband made no effort to likewise exclude the testimony of Mr. Myers on the same ground, either through an oral motion prior to trial or by a timely objection during Mr. Myers's testimony. Thus, to the extent that Mr. Myers's testimony was on the same subject matter offered by Mr. Alexander, Husband failed to take any corrective action by seeking to also exclude the testimony of Mr. Myers.

Finally, and most importantly, Husband did not designate the exclusion of Mr. Alexander's testimony concerning the third report as an issue in this appeal. "We may consider an issue waived where it is argued in the brief but not designated as an issue." ***Childress v. Union Realty Co.***, 97 S.W.3d 573, 578 (Tenn. Ct. App. 2002); Tenn. R. App. P. 27(b). As noted above, nothing in Husband's designated issues involve the exclusion of Mr. Alexander's expert opinion or the third report prepared by Mr. Alexander.[18] Under the totality of the circumstances, we therefore conclude that Husband

---

Husband's income and marital property.

[17] Specifically, counsel for Husband stated that the trial court "can look at an income and expense statement and you can determine what's needed under the alimony statute." Following this statement, the trial court stated that "you all agree I don't need an expert to do that."

[18] In an apparent attempt to correct this deficiency, Husband raises the exclusion of the expert report as separate heading in his reply brief. Regardless, the statement of the issues section of Husband's initial brief contains nothing suggesting that the trial court's evidentiary

failed to preserve any issue regarding the exclusion of Mr. Alexander's testimony concerning the contents of the third report.

Next, Husband asserts that Wife's claimed expenses were "grossly overstated" and that the trial court did not engage in any analysis prior to determining Wife's need to be in the range of $17,500.00. According to Husband, Wife's claimed expenses were at odds even with her own expert's analysis of the parties' historical spending. Additionally, Husband contends that the trial court erred in failing to consider income that could be derived from Wife's property.

We first consider whether the trial court erred in setting Wife's need in the range of $17,500.00. Husband takes issue with the trial court's decision to find Wife's need in a range, rather than through a precise calculation. While determining need with mathematical precision may be required in cases where the ability to pay is also at issue, in this case, there can be no dispute that Husband has the ability to pay both the alimony amount requested by Wife and the alimony actually awarded by the trial court. Indeed, this Court generally reviews an alimony award, including the calculation of a spouse's need, to determine if the award is in the range of reasonableness. *See Avaritt v. Avaritt*, No. M2007-01804-COA-R3-CV, 2008 WL 4072087, at *5 (Tenn. Ct. App. Aug. 28, 2008) (holding that the amount of alimony awarded was within the range of reasonableness). This Court has previously affirmed an alimony award based upon the trial court's finding that the obligee spouse's need was "in the range of $461.00 per month[.]" *Elsea v. Elsea*, No. E2002-00387-COA-R3-CV, 2003 WL 1787478, at *1 (Tenn. Ct. App. Apr. 3, 2003). The lack of mathematical precision in this case was therefore not an abuse of discretion.

Husband next contests the $17,500.00 range chosen by the trial court, which Husband contends includes grossly overstated expenses. In support, Husband notes that Wife's own financial expert testified that the family of five spent approximately $30,000.00 per month, while Wife contends that she requires more than half of that amount on her own. Likewise, Husband points to various expenses claimed by Wife that are far greater than those found by Wife's own expert historically. Husband notes the various allegedly exorbitant expenses listed by Wife in her income and expense statement, including expenses for a new condo and vacation home, while also requiring expenses for repairs, maintenance, and other home-related fees, apparently on the parties' current home.

We begin with a review of the trial court's findings on this issue:

---

ruling regarding the exclusion of an expert has been designated as an issue on appeal. *Cf. Adler v. Double Eagle Properties Holdings, LLC*, No. W2014-01080-COA-R3-CV, 2015 WL 1543260, at *6 (Tenn. Ct. App. Apr. 2, 2015) ("[A] reply brief simply is not a substitute for an initial brief to this Court.").

[Wife] contends that she needs monthly expense money in the amount of $33,201. This is a significant overstatement. The Court has considered her monthly expense statement. After discounting money spent on her adult children, considering her plans to sell and then downsize, and excluding extravagances for maintenance, home repairs, yard maintenance, uncovered medical and dental, car repairs, eating out and over $1,500 per month on vacations/short trips, etc., the Court would set her monthly expenses more in the range of $17,500.00. [Wife] seems to have set her expenses for a family of five rather than for what she alone needs. The Court remains cognizant that it must consider the parties' prior lifestyle in making its alimony decision.[19]

(Internal citations omitted). Thus, the trial court reduced Wife's claimed expenses by nearly 50%. Specifically, it appears that the trial court excluded all expenses related to the parties' adult children, a vacation home, maintenance, home repairs,[20] yard maintenance, uncovered medical and dental expenses, car repairs, eating out, and vacations. The trial court's ultimate decision, however, did not rest solely on the exclusion of these expenses. Rather, excluding only these amounts from Wife's claimed expenses results in expenses of approximately $22,000.00 per month. The trial court therefore reduced Wife's expenses by a far greater measure than specifically stated. Indeed, after excluding other expenses which Wife admitted were overstated, such as housekeeping expenses and car insurance, or that would likely be eliminated when Wife moved from the marital home to a condo,[21] Wife's expenses still total greater than the amount awarded by the trial court.

Husband argues, however, that some expenses Wife claimed were larger than those found to have historically been paid by the parties, such as gifts, jewelry, or expenses for eating out. For example, Mr. Myers's report indicates that the parties spent only $36.00 per month in gifts, or $432.00 per year. Wife testified, however, that many purchases made by the parties were purchased with cash.[22] Although the trial court did

---

[19] The trial court indicated in footnote that it considered the opinion of Mr. Myers in making this determination.

[20] During trial, Husband took issue with Mr. Myers's spending analysis because it included expenditures related to the parties' practice of "flipping" houses. The trial court, however, appears to exclude Wife's claimed expenses associated with that practice by excluding the expenses for home repairs and maintenance from her needs.

[21] These expenses include fees associated with the marital home's homeowner's association. There is no dispute that a condo purchased by Wife in the future would also include some homeowners fees, although the amount was unknown at trial.

[22] Mr. Myers's report indicates that the parties' expenditures for cash and cash withdrawals were large but included some one-time anomalous expenses such as the purchase of stock in Husband's company. Specifically, in 2014, the parties spent $34,573.00 in withdrawals and $36,440.00 in cash; in 2015, the parties spent $1,344.842.00 in withdrawals and $1,631,513.00 in cash; and in 2016, the parties spent $181,900.00 in withdrawals and $36,328.00 in cash. When these expenditures are included in the parties' monthly spending, the parties' spending increases from the $30,000.00 estimated by Mr. Myers to

not specifically address this issue, we must conclude that Wife's testimony on this issue is more plausible. Indeed, it strains credulity that a family with three young adult daughters with a household income of over $1 million per year would spend less than $500.00 per year on gifts. Given Wife's testimony that many items were purchased with cash, as well as the totality of the evidence presented, we cannot conclude that the trial court's finding that Wife's need was in the range of $17,500.00 per month was outside the range of reasonableness in this particular case.

We next consider Husband's contention that the trial court failed to consider investment income generated from the considerable assets awarded to Wife in the divorce. Under Tennessee Code Annotated section 36-5-121(i), one factor that should be considered in any award of alimony is the relative earning capacity of the parties, which includes "income from pension, profit sharing or retirement plans and all other sources[.]" Tenn. Code Ann. § 36-5-121(i)(1). As previously discussed, Wife was awarded $2,698,091.00 in marital property pursuant to the divorce decree, including a $400,000.00 undeveloped lot and considerable liquid assets. There was generally no dispute that Wife could in fact earn income from these assets.

Despite Husband's argument otherwise, however, the trial court expressly considered this fact in its alimony award. The trial court's order contains the following findings on this issue:

> The Court finds that even with partial rehabilitation, and even with investment income from the marital assets awarded, [Wife] would be unable to achieve the standard of living after the divorce comparable to that which she enjoyed during the marriage without alimony in futuro. The Court is well aware of the considerable assets she will receive in the property division, but the Court must also consider the very substantial income of [Husband].

Thus, Husband's argument that the trial court abused its discretion by not considering Wife's investment income is unpersuasive. Moreover, it appears that the only evidence presented as to Wife's expected income from investments was contained in Mr. Alexander's third report, which was ultimately excluded by the trial court.[23] As previously discussed, however, the exclusion of evidence concerning Mr. Alexander's third report has been waived on appeal, as discussed *supra*. As such, we must conclude that the trial court had no evidence before it of the specific amount that could be generated from Wife's property in which to make a more specific finding on this issue.

---

over $50,000.00 per month in 2015 and $163,000.00 in 2015. As previously discussed, Mr. Myers did not include any expenditures classified as withdrawals or cash as part of his calculation of the parties monthly expenses, which Mr. Myers calculated at approximately $30,000.00 per month.

[23] During discussions regarding the exclusion of Mr. Alexander's testimony on this issue, it does not appear that any mention was made of the fact that evidence regarding income from investments was being excluded in addition to evidence of Wife's future expenses.

Finally, relative earning capacity of each party is only one of many factors contained in section 36-5-121(i). We are simply not persuaded that the trial court abused its discretion in failing to assign more weight to Wife's income from investments, considering Husband's undisputed ability to pay and the lavish lifestyle enjoyed by the parties. *See Hallums v. Hallums*, No. M2016-00396-COA-R3-CV, 2017 WL 2684605, at *3, n. 4 (Tenn. Ct. App. June 21, 2017) (holding that the trial court did not err in assigning a certain factor considerable weight in its alimony award); *Chumley v. Chumley*, No. M2015-00378-COA-R3-CV, 2014 WL 10936795, at *6 (Tenn. Ct. App. Dec. 23, 2014) (affirming the trial court's alimony award where it placed weight on only some of the statutory factors).

As previously discussed, the trial court's decision to award alimony, including the amount of alimony awarded, is reviewed for an abuse of discretion. *Gonsewski*, 350 S.W.3d at 105. Pursuant to this standard, we are not permitted to second-guess the trial court's decision where the trial court chooses one among several acceptable alternatives. *See Henderson*, 318 S.W.3d at 335. Consequently, a party seeking to overturn a trial court's discretionary decision "undertakes a heavy burden." *State ex rel. Jones v. Looper*, 86 S.W.3d 189, 193 (Tenn. Ct. App. 2000). Based on the foregoing, we conclude that Husband failed to show that the trial court abused its discretion in finding that Wife's need was in the range of $17,500.00 a month. Here, the testimony at trial indicated that the parties enjoyed a lavish standard of living throughout the marriage. The trial court clearly considered the fact that Wife's claimed expenses were overstated in awarding Wife little over 50% of her requested expenses. Moreover, the trial court expressly considered Wife's investment income in its award. As such, we affirm the trial court's decision finding that Wife's need is in the range of $17,500.00 per month.

We note, however, an inconsistency in the trial court's order that appears to support Husband's argument that the trial court awarded Wife more alimony than she needs, even given our decision to affirm the trial court's finding that Wife's necessary expenses are in the range of $17,500.00 per month. Here, the trial court awarded Wife $15,000.00 in alimony in futuro, as well as $3,500.00 in rehabilitative alimony. The trial court's decision to award rehabilitative alimony results from the trial court's finding that Wife was in need of some retraining in order to re-enter the workforce. Indeed, given the trial court's finding that Wife could earn up to $35,000.00 per year (or approximately $2,916.00 per month) once she resumed work, the addition of $15,000.00 per month would bring Wife's total income from employment and alimony very close to the $17,500.00 range found by the trial court.[24]

The same is not true, however, of the eighteen month period in which Husband was also ordered to pay rehabilitative alimony. Assuming that Wife was unable to find work during this period, as the trial court apparently did, Husband's alimony obligation during this time is $1,000.00 more than Wife's stated need. We recognize, of course, that

---

[24] Specifically, Wife's income from employment and alimony would be $17,916.00 per month.

- 13 -

the trial court did not set Wife's need at exactly $17,500.00 and that we are not at liberty to tweak the trial court's alimony award absent an abuse of discretion. *See **Folger v. Folger***, No. E2014-02069-COA-R3-CV, 2016 WL 7786448, at *5 (Tenn. Ct. App. Jan. 28, 2016) ("This Court does not tweak or second-guess trial courts on alimony determinations[.]"). We note, though, that the trial court's alimony award during this time period is supplemented by the $650.00 that Husband was ordered to pay for Wife's health insurance premium during this time.[25] There can be no dispute that any health insurance premium is included in Wife's need. As such, the trial court's alimony award for the eighteen months following the divorce decree results in an award $1,650.00 over Wife's need as found by the trial court. Nothing in the trial court's order specifically addresses the purpose or equity of such an overage.[26] As such, we vacate the award of rehabilitative alimony and remand solely for consideration of whether the award comports with Wife's need as found by the trial court and affirmed by this Court. The trial court's award of $15,000.00 in alimony in futuro is affirmed.

## Tax Refund

Husband next asserts that the trial court's final order contains a clerical error concerning the division of the parties' tax refund from 2017. According to Husband, the trial court's order mistakenly indicated that the parties' 2017 tax refund was to be divided equally, when the trial court intended instead that the parties' 2016 tax refund was to be divided. Wife sharply disputes Husband's argument, contending that the trial court's order properly references the 2017 tax refund, based upon the proof submitted. Generally, the trial court is in the best position to correct a clerical error. Indeed, the Tennessee Rules of Civil Procedure reflect this common sense notion by allowing trial courts to correct clerical errors "at any time on [the court's] own initiative or on motion of any party[.]" Tenn. R. Civ. P. 60.01 (noting that once an appeal is docketed, mistakes may only be corrected with leave of the appellate court). Despite this rule, nothing in the record indicates that Husband asked the trial court to correct this alleged error. Given that this matter is being remanded for the limited purpose of the reconsideration of the rehabilitative alimony award, we conclude that the better practice is also to remand this issue to the trial court solely to determine if a clerical mistake was made in dividing the 2017 tax refund, rather than the 2016 tax refund.[27]

---

[25] Wife's income and expense statement indicated that her health insurance premium was $866.00 per month. The trial court's order specifically states that Husband is required to pay the premium only up to $650.00 per month.

[26] For example, the trial court does not state that the additional funds are necessary to pay for retraining in order to improve Wife's employability. From our review of the record, it does not appear that proof was presented on the cost of retraining.

[27] In the conclusion to her brief, Wife requests an award of attorney's fees in connection with this appeal. Wife did not designate this request as an issue on appeal and cites no authority in support of any award of attorney's fees in this case. As such, we decline to award attorney's fees to Wife. *See generally **Forbess v. Forbess***, 370 S.W.3d 347, 356 (Tenn. Ct. App. 2011) (holding an issue raised by the appellee

**Conclusion**

The judgment of the Williamson County Chancery Court is affirmed in part and vacated in part. This matter is remanded to the trial court for further proceedings consistent with this Opinion. Costs of this appeal are taxed to Appellant Steven Charles Brecker, for which execution may issue if necessary.

_____
J. STEVEN STAFFORD, JUDGE

was waived where it was not designated as an issue on appeal).